United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD C. DAVIDSON, <br> Petitioner, <br> v. <br> ERIC ARNOLD, <br> Respondent. | Case No. 16-cv-03298-JD <br><br> **ORDER RE PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

Richard Davidson, a California state prisoner, filed pro se a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. The claim addressed here is whether the prosecutor's attacks on defense counsel's integrity and honesty in closing argument, and that counsel's failure to object or request a limiting instruction, deprived Davidson of effective representation under the Sixth Amendment. The Court finds that the prosecutor's ad hominem attacks were serious misconduct, and that defense counsel performed inadequately by failing to redress them in any way. The petition is granted.

## BACKGROUND

A jury found Davidson guilty in 2011 of felony child abuse, two counts of felony aggravated assault and two counts of misdemeanor vandalism. *People v. Davidson*, No. H037751, 2015 WL 659891, at *1 (Cal. Ct. App. Feb. 9, 2015). It also found that Davidson had two prior strike convictions and three prison priors. *Id*. He was sentenced to an indeterminate term of 50 years to life plus a determinate term of 26 years in state prison. *Id*. at 3.

In 2015, the California Court of Appeal, Sixth District, vacated Davidson's conviction and sentence for one of the aggravated assault counts; directed the trial court to resentence him for one of the misdemeanor counts; and stayed the sentence on the other misdemeanor count. *Id*. at 21. The conviction was otherwise affirmed, and the case was remanded for resentencing. *Id*. Davidson filed a petition for review in the California Supreme Court that was denied on May 20, 2015. Answer, Exs. 6, 7. On January 19, 2016, he was resentenced to an indeterminate term of 25 years to life plus a determinate term of 13 years in state prison. Answer, Ex. 8.

The Court of Appeal summarized the facts as follows:

> The Prosecution's Evidence
>
> **Amber V.'s Testimony**
>
> Amber V. testified at defendant's trial. Amber V., 15 years old at the time, was friends with Valdez, who lived in a trailer with Little. On February 22, 2010, Valdez and Amber V. were sitting inside Valdez's car, which was parked in front of Little's trailer. Defendant drove up to the trailer in a white Ford Expedition, exited his car, and began smashing Little's truck, which was parked near the trailer, with a metal bat while yelling.
>
> Amber V. and Valdez locked the doors of the car they were in. Defendant walked over, made eye contact with Amber V., and said: "Do you want some of this, too, bitch?" Defendant then struck the passenger side car window where Amber V. was sitting with the bat, shattering the glass on impact. Amber V. moved to avoid being hit and said she believed if she had not moved the bat would have struck her face. The bat touched her shoulder but did not cause her injury. She sustained cuts on her face from the shattered glass. Amber V. said she did not know defendant before the incident.
>
> Amber V. testified that after a while, Little came out of the trailer and yelled at defendant. Defendant then proceeded to chase Little around while swinging the bat. Little avoided being hit. Defendant returned to his car and drove away shortly after. Amber V. said the entire incident took place over the course of approximately two minutes, with the attack on Valdez's car lasting around five seconds. A neighbor called the police.
>
> **Officer Vining's Testimony**
>
> Hollister Police Department Officer Steven Vining arrived at Little's trailer shortly after defendant left. Vining took photographs of the scene and of Amber V.'s facial injuries and conducted interviews with Amber V., Valdez, and Little. Amber V. told Vining that the bat had not struck her. At trial, Amber V. asserted she did not tell Vining the bat touched her shoulder because it had not injured her, and she was more concerned about the cuts on her face. Vining

testified he did not recall Amber V. telling him that defendant had chased Little with the bat.

That same day, Officer Vining drove to a house where defendant was reportedly living. No one answered the door, and Vining did not see defendant's car nearby. Vining drove to defendant's workplace but did not find defendant or his car there. A day later, Vining returned to defendant's house and saw defendant standing outside next to a Ford Expedition. Defendant explained that he used to live in Little's trailer but had moved out because Little was a "tweaker," which Vining understood meant he used methamphetamine. Defendant denied being at Little's trailer the previous day and denied vandalizing any property or assaulting anyone. Vining looked into defendant's car and did not see a bat.

Officer Vining took an older booking photograph of defendant and created a six-photo lineup, which he presented to Amber V. after giving her an admonishment. Amber V. identified defendant from the lineup.

**The Defense's Evidence**

Defendant testified on his own behalf. He denied any wrongdoing and insisted he was home at the time of the incident.

Defendant said he had lived at Little's trailer for a month and a half but had moved out because there were drugs. He denied ever using drugs at the trailer. Defendant may have met Valdez at some point but did not know Amber V.

Defendant acknowledged he had previous convictions for dissuading a witness and being a felon in possession of a firearm.

*Davidson*, 2015 WL 659891, at *1-2.

During closing argument before the jury, San Benito County prosecutor Patrick Palacios (Reporter's Transcript ("RT") at 2), called out Davidson's lawyer on several occasions. To start, he referred to a diagram made by Amber V. during her cross-examination by defense counsel. Palacios told the jury:

> The way she draws it, the car's right up against the house. . . . It doesn't make sense. Look at the drawing. *Very skillful manipulation. And that's [defense counsel's] job, to confuse you. [¶] He does his job if he confuses just one of you enough so that you can't make a decision in this case. I was a defense attorney for many years; I know what the job is about.* And as I said, he's just doing his job and I'm not trying to fault him, but that's the truth. [¶] . . . [¶] . . . *Again, he tried to confuse [Amber V.]. . . . My job was not to confuse her or to confuse you.*

RT 285-87 (emphasis added). Davidson's lawyer did not object or ask for a limiting instruction, and the trial court did not intervene in any way.

3

Palacios made another specific remark about Davidson's counsel while discussing the testimony of Officer Vining: "[D]on't let [defense counsel] confuse the facts. Don't let him. I told you I used to be a defense attorney and I know what you do in a case like this." RT at 289. Davidson's attorney again did not object or request an instruction, and the trial court remained silent.

Palacios made a significantly longer series of comments during the rebuttal argument:

> [PROSECUTOR]: And let me tell you something else. *I was a defense attorney. Now I'm working for the State of California. I'm doing justice. I'm not getting paid very good money to defend convicted felons*.
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object to that statement.
>
> [THE COURT]: It's noted. Keep in mind, first of all, Ladies and Gentlemen, what the attorneys say is not evidence. It's just their view of the case. You can go back to your view of the case, though, please.
>
> [PROSECUTOR]: Thank you, Your Honor. I'm just saying that in response to the comment that I'm doing defense now and I used to be a prosecutor, there's the contrast. *Like the truth hurts [petitioner] but the fact is, I have no axe to grind in this action. My job is to do justice. Not to win, not to confuse just one of you so that my client can walk. . . . [¶] I elicited the truth from the witnesses. . . . He [defendant's attorney] confused the witnesses, because that's his job. And I know you guys noticed this, too. He tried to confuse you right now. Did you hear some of the stuff that he said? Some of the leaps in logic that he drew in trying to argue to you his case? [¶] . . . [¶] . . . He's [defense counsel] being disingenuous right off the bat. Again, he is a good attorney and he's doing his job, but he's doing that and it's obvious.*"

RT at 319-21 (emphasis added).

Palacios also told the jury that:

> My job as the Deputy District Attorney is to do justice; to seek the truth and do what's right. [¶] . . . I want what's right because that's my job. That's my obligation. [¶] The defense are here-[defense counsel], I'm not going to take anything away from him. He's a fine attorney. He did a good job. But the truth is, his job is to do the best he can to make sure that his client is not convicted.

RT at 273-74. The prosecutor favorably contrasted himself to defense counsel by saying that his job was to help the witness think straight, not to confuse the witness or to confuse the jury. RT at

4

285-87. Defense counsel did not object to any of these statements, and there was no comment from the trial court.

In addition, Palacios specifically criticized defense counsel's jury selection conduct:

> And we chose you guys, we went back and forth, and we said, No. The defense excuses this person. The People excuse this person. Do you remember that? *But if you also remember, I chose you. [¶] When we got to the end, [defense counsel] had no choices left but to accept you guys because he didn't have any more chances to say, I want to get rid of you. I did. The judge said, You have one challenge left. And I said, No, this is the jury I want because this is the jury that's going to do justice in this case. [¶] This is a jury who's going to listen to the facts, listen to the law and is not going to be confused or misled.*

RT at 274 (emphasis added). Palacios sounded a similar note during rebuttal, stating "Don't be afraid to do justice. I chose you and I'm confident that's exactly what you will do." RT at 332. Again, defense counsel did not object and the trial court was silent.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion of the California Court of Appeal for the claims in the petition.

As grounds for federal habeas relief, Davidson alleges that: (1) the prosecutor committed misconduct; (2) defense counsel rendered ineffective assistance by failing to object to the prosecutor's misconduct; (3) the trial court failed to instruct the jury on lesser-included offenses; (4) there was insufficient evidence to support his conviction for child abuse; (5) the trial court failed to give proper jury instructions that he knew the victim was under the age of 18; and (6) there was cumulative error.

## PROSECUTORIAL MISCONDUCT

At the heart of the habeas petition is the contention that Davidson was denied effective assistance of counsel, and a fair trial, because the prosecutor directly impugned the integrity and veracity of Davidson's lawyer with virtually no objection or other remedial effort. Because the Court grants habeas relief on this basis, and thus affords Davidson complete relief on his petition, it will not take up the other habeas claims. *See Blazak v. Ricketts*, 971 F.2d 1408, 1411-14 (9th

6

Cir. 1992); *see also Robbins v. Smith,* 152 F.3d 1062, 1068-69 (9th Cir. 1997), *rev'd on other grounds,* 528 U.S. 259 (2000).

The first issue for discussion is forfeiture. On direct appeal, respondent argued that Davidson had forfeited the misconduct claims by not objecting at trial. *Davidson*, 2015 WL 659891, at \*9; *see People v. Silva*, 25 Cal. 4th 345, 373 (2001) ("[t]o preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct."). The Court of Appeal appears to have assumed, without clearly holding, that the prosecutorial misconduct claims were forfeited. *Davidson*, 2015 WL 659891, at \*9 n.7. Even so, it considered the merits because Davidson also presented a claim that trial counsel was ineffective for failing to object to the misconduct. *Davidson*, 2015 WL 659891, at \*9. The Court of Appeal denied the prosecutorial misconduct claims on the merits, and also found that defense counsel did not render ineffective assistance of counsel. *Id.*, at \*10-16.

Although the court was not crystal clear about forfeiture, it said enough to indicate that forfeiture was, at a minimum, assumed. Consequently, prosecutorial misconduct per se is not reviewable here. *See Zapata v. Vasquez*, 788 F.3d 1106, 1111-12 (9th Cir. 2015) (prosecutorial misconduct claim defaulted where state court discussed merits of claim and relied on a procedural bar). The Court will not decide the petition on the basis of prosecutorial misconduct alone, but rather on the question of whether Davidson's lawyer performed inadequately in response to the misconduct. *See id.* at 1112; *Trillo v. Biter*, 769 F.3d 995, 1002 (9th Cir. 2014) (analyzing instances of prosecutorial misconduct to which trial counsel did not object as ineffective assistance claims). There is a degree of irony in focusing on ineffective assistance of defense counsel when the root of the matter is prosecutorial misconduct, but that is the approach required by the posture of this case.

### INEFFECTIVE ASSISTANCE OF COUNSEL

**Legal Standards**

The Sixth Amendment guarantees effective assistance of counsel to defendants in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for a claim of

7

ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a just result. *Id*.

To prevail on a Sixth Amendment ineffectiveness claim, petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient in that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The *Strickland* prejudice analysis is complete in itself. There is no need for a harmless error review pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

The significance and materiality of defense counsel's failure to object turns largely on whether the prosecutor committed misconduct. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (the merits of the underlying claim determine the ineffective assistance of counsel claim because counsel cannot have been ineffective for failing to raise a meritless objection). The misconduct concern is one of due process and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct during closing arguments has a substantial and injurious effect or influence in determining the jury's verdict. *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637-38). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The federal habeas court must distinguish "between ordinary trial error of a prosecutor and that sort of egregious misconduct . . . amount[ing] to a denial of constitutional due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974).

An important factor in determining whether misconduct amounted to a violation of due process is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and that no due

8

process violation occurred. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *Darden*, 477 U.S. at 182.

Other factors in determining whether misconduct rises to a level of a due process violation include: (1) the weight of evidence of guilt, *compare United States v. Young*, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt) *with United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern, *see Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972); and (4) whether a prosecutor's comment misstates or manipulates the evidence, *see Darden*, 477 U.S. at 182.

A prosecutor is perfectly free to comment on and criticize the substance of a defense. *See, e.g.*, *United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013) (prosecution's characterization of defense's case as "smoke and mirrors" was not improper where comment was directed to strength of the case); *Williams v. Borg*, 139 F.3d 737, 745 (9th Cir. 1998) (prosecutor's characterization of defense counsel's argument as "trash" could not be characterized as improper because "[a] lawyer is entitled to characterize an argument with an epithet as well as a rebuttal"). But a prosecutor may not make ad hominem and personalized attacks on defense counsel, or impugn her integrity and veracity. *See Ruiz*, 710 F.3d at 1086; *Bruno v. Rushen*, 721 F.2d 1193, 1195 (9th Cir. 1983) (prosecutor's comments equating defendant's hiring of counsel with guilt and comments attacking integrity of defense counsel without evidence improper and error of constitutional dimension). Nor may the prosecutor attack defense counsel's legitimate trial tactics and decisions. *United States v. Frederick*, 78 F.3d 1370, 1379-80 (1996). Even so, there is no constitutional error unless the prosecutor's comments were prejudicial to the point of denying the defendant a fair trial. *Compare United States v. Rodrigues*, 159 F.3d 439, 449-51 (9th Cir. 1998) (combination of prosecutor's misstatement of the law with slander of defense counsel was prejudicial where there was no rebuke of false accusations by the court, no response was allowed the vilified lawyer and no curative instruction was given), *amended*, 170 F.3d 881 (9th Cir. 1999), *with United States v.*

*Foster*, 711 F.2d 871, 883 (9th Cir. 1983) (implication that defense counsel was part of conspiracy to distribute heroin was neutralized by prosecutor's corrective statement in response to objection by defense counsel).

**Discussion**

The Court of Appeal declined to find misconduct by the prosecutor:

### a. Comments about Defense Counsel

> Contrary to defendant's claims, we find the challenged statements do not amount to an improper attack on defense counsel's character. Rather, the prosecutor was denigrating defense counsel's choice of tactics. While his words may have been poorly chosen, the prosecutor did nothing more than reiterate to the jury that it should not be confused or swayed by the defense's arguments, which courts have consistently found to be appropriate. (*See*, *e.g.*, *People v. Taylor* (2001) 26 Cal. 4th 1155, 1166-1167 [finding no misconduct when prosecutor made comments referring to defense "tricks" or "moves" to demonstrate a witness' confusion or credibility]; *People v. Goldberg* (1984) 161 Cal. App. 3d 170, 190 [no misconduct where prosecutor told jurors that defense counsel was "'trying to get you confused about what some of the issues are'" and was "'trying to sidetrack you'"]; *People v. Medina* (1995) 11 Cal. 4th 694, 759 [comments that "'any experienced defense attorney can twist a little, poke a little, try to draw some speculation'" was not a personal attack on defense attorney's credibility and was not misconduct].)
>
> We also find the prosecutor did not commit misconduct when he asserted defense counsel was being "disingenuous" during rebuttal. Typically, statements where the prosecutor "characterized defense counsel as 'liars' or accused counsel of lying to the jury" are impermissible. (*People v. Young* (2005) 34 Cal. 4th 1149, 1193.) However, if the prosecutor's statements were a response to a statement made by defense counsel, we must "view the prosecutor's comment in relation to the remarks of defense counsel, and inquire whether the former constitutes a fair response to the latter." (*People v. Frye* (1998) 18 Cal. 4th 894, 978, disapproved of on a different ground in *People v. Doolin*, *supra*, 45 Cal. 4th at p. 421, fn. 22.)
>
> The prosecutor commented that defense counsel was being disingenuous in response to defense counsel's earlier statement that he had taken on defendant's case because he thought it was fundamentally unfair. Defendant's counsel had stated that he had read the charging document and had seen there were three alleged victims. Defendant's counsel then explained that although neither side is required to call all witnesses, he wanted to remind the jury that two of the alleged victims did not testify in this case. In response, the prosecutor stated defense counsel was being "disingenuous" for insinuating he knew the prosecution was not going to call all three alleged victims to testify when he read the charging document. Therefore, the crux of the prosecutor's argument was not that defense counsel was lying or fabricating

10

evidence but was that defense counsel lacked evidentiary support for his earlier assertion. Reading this statement in context, it was a fair comment on defense counsel's statements and was not misconduct.

*Davidson*, 2015 WL 659891, at *12.

### b. Defense Attorneys in General

[T]he prosecutor's statements can be interpreted as a reminder to the jury not to be persuaded by defense tactics and the defense evidence. However, the statements were improper to the extent the jury may have understood them as asserting that defense attorneys in general are allowed to lie and distort the facts. Whether any misconduct occurred is arguable. Nonetheless, even where there was misconduct we would conclude it was harmless. (*People v. Medina* (1990) 51 Cal. 3d 870, 896.) As we will explain later, there was no prejudicial effect on defendant's trial.

. . . .

We conclude the prosecutor may have committed arguable misconduct when he implied that defense counsel's job was to confuse the facts and mislead the jury, while the prosecutor's role is to elicit the truth. However, we are not persuaded that this limited incident of arguable misconduct warrants reversal of the jury's verdict.

The statements challenged by defendant on appeal constitute only a fraction of the prosecutor's closing argument. Additionally, the jury was specifically instructed by the court that the attorneys' arguments were not evidence and that they were not to be swayed by public opinion or public feeling. "The presumptions that jurors understand and follow their instructions [citation] and do not draw the most damaging inferences from ambiguous arguments [citation] minimize our concern that the instant jury's verdict was influenced by a misapplication of the prosecutor's remarks." (*People v. Shazier* (2014) 60 Cal. 4th 109, 150-151.)

We also disagree with defendant's assertion that there was a pattern of misconduct so egregious that it infected the trial with a fundamental unfairness. The limited instance of arguable misconduct does not give rise to a constitutional violation on the state or federal level. No reversible error appears.

*Davidson*, 2015 WL 659891, at *13, 15.

### c. Mischaracterization of Voir Dire Process

These statements were not improper considering their context. They were not an impermissible appeal to the self-interest, passions, or prejudices of the jury. Rather, the statements served as a reminder to the jury of their duty to examine the evidence, listen to the facts, and apply the law as instructed.

11

> Furthermore, even if we construe the statements as defendant argues we should—that the prosecutor improperly insinuated he "chose" the jury over the defense's objections—there would be no prejudice. It is evident that all the jurors were present during the voir dire process and would be able to recall that both the prosecutor and defense counsel exercised their respective rights to challenge prospective jurors. Additionally, the jury was instructed multiple times by the court that the attorney's arguments were not evidence. We presume the jury understood these instructions and were able to distinguish evidence from argument in this case. (*People v. Fauber* (1992) 2 Cal. 4th 792, 823.)

*Davidson*, 2015 WL 659891, at *13.

**Deficient Performance**

The first step in the Sixth Amendment inquiry is to determine whether defense counsel performed deficiently by failing to object to the prosecutor's statements in the closing and rebuttal arguments. For this question, the Court looks to whether the prosecutor's statements constituted misconduct such that a failure to challenge them would be inadequate representation.

The Court has no trouble concluding that Palacios's comments were wholly improper, and that the Court of Appeal was unreasonable to conclude otherwise. As the trial excerpts demonstrate, the prosecutor made repeated ad hominem attacks on Davidson's lawyer and defense attorneys in general. Among other remarks, the prosecutor told the jury that: (1) "the truth" was that Davidson's lawyer wanted to confuse and paralyze them so they could not make a decision (RT at 285-87); (2) the prosecutor was doing justice and eliciting the truth while the defense lawyer was "disingenuous" and intentionally trying to confuse them (RT at 319-21); (3) the prosecutor personally chose the jury members because they were fair, while the defense lawyer wanted "to get rid of you" (RT at 274); and (4) the defense lawyer was "getting paid very good money to defend convicted felons" (RT at 319).

These statements were more than just "poorly chosen" words. *Davidson*, 2015 WL 659891, at *12. The Court of Appeal itself found that the comments about defense counsel's job to confuse the facts and mislead the jury were likely misconduct. *Id.* at *13. They and the other remarks were fundamental attacks on the integrity and honesty of Davidson's lawyer, and invited and indeed encouraged the jury to decide innocence or guilt on the basis of impermissible ad hominem factors rather than the evidence. This is not a situation where the prosecutor made

12

legitimate critiques of the defense's case or theories. *See*, *e.g.*, *Ruiz*, 710 F.3d 1077, 1086-87. This is the entirely different situation of a prosecutor undermining the fair administration of justice by wrapping himself in a cloak of rectitude and righteousness while branding the defense attorney as a deceiver paid to hide the truth and manipulate the jury. To make matters worse, the prosecutor circled back to these themes time and again in his closing and rebuttal remarks. It is not difficult to conclude that this egregious misconduct substantially undermined the fairness of Davidson's trial, and had an injurious effect on the outcome.

The next question is whether counsel's failure to object to the prosecutor's misconduct violated the Sixth Amendment. Defense counsel objected only once to the prosecutor's multiple improper statements. Most of the comments were not objected to or challenged in any way. The Court of Appeal did a cursory *Strickland* assessment after dismissing the misconduct claims, and held that "we also conclude that defendant's trial counsel did not render ineffective assistance for his failure to object to the alleged incidents of misconduct. Defendant has failed to demonstrate he was prejudiced by his counsel's alleged failures." *Davidson*, 2015 WL 659891, at *15 (citing *Strickland v. Washington*, 466 U.S. 668, 697 (1984)).

Because the prosecutor committed misconduct that violated fairness and due process, this conclusion cannot stand. On habeas review, the Court defers to trial counsel's tactical choices with respect to objections, and the state court's determination of whether those choices were reasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (review is "doubly deferential when it is conducted through the lens of federal habeas"); *Zapata*, 788 F.3d at 1115. The Court looks to whether "it would have been reasonable to reject [Davidson's] allegation of deficient performance for any of the reasons expressed by the court of appeal." *Cannedy v. Adams*, 706 F.3d 1148, 1159 (9th Cir. 2013). "Because of the difficulties inherent in making the evaluation, [the Court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [Davidson] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Tilcock v. Budge*, 538 F.3d 1138, 1146 (9th Cir. 2008) (*quoting Strickland*, 466 U.S. at 689). Although "[t]he right to effective assistance extends to closing arguments," *Yarborough*, 540 U.S. at 5, failure to object

13

during a closing summation generally does not constitute deficient performance. "[A]bsent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct." *Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (internal quotation marks omitted).

In this case, the prosecutor's statements were egregious, and defense counsel's failure to object was objectively unreasonable. *See Strickland*, 466 U.S. at 687-88. The Ninth Circuit found as much in *Zapata*, where it granted habeas relief for a defense counsel's failure to object to a prosecutor's statements in closing arguments. The court stated that "trial counsel's silence, and the judge's consequent failure to intervene, may have been perceived by the jury as acquiescence." *Zapata*, 738 F.3d at 1116. So too here, where the jury could have perceived the same silence of defense counsel and the trial court as reinforcing the prosecutor's attacks. The court also emphasized the timing of the comments in *Zapata*, which were made after defense counsel's last opportunity to speak to the jury had passed. *Id*. "By reserving the remarks for rebuttal, the prosecution insulated them from direct challenge. As a result, the only way Zapata's trial counsel could have challenged the misstatements would have been to object and request a curative instruction." *Id*. The same observation applies fully here, as does the conclusion that counsel's failure to act in that situation fell below an objective standard of reasonableness under *Strickland*. *Id*.

Nothing in the record provides any insight into why defense counsel failed to object, or why that was within the range of permissible professional conduct. It is certainly true that an attorney may choose not to object to avoid highlighting unfavorable evidence or facts, but the prosecutor's comments here were not directed to the evidence. They were directed specifically to defense counsel's integrity and veracity. A reasonably competent attorney would not have allowed such overtly inappropriate remarks to stand without protest. As in *Zapata*, "the record suggests 'nothing strategic about failing to object' to patent, inflammatory and repeated misconduct." *Zapata*, 788 F.3d at 1116. To the extent the state Court of Appeal might have perceived a reason, it indulged in an impermissible "post hoc rationalization for counsel's decisionmaking that contradicts the available evidence of counsel's actions." *Harrington v.*

14

*Richter*, 562 U.S. 86, 109 (2011) (internal quotation marks omitted); *see also Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003) (rejecting a state court's attempt to rationalize counsel's limited investigation into mitigating evidence as a strategic decision when available evidence suggested counsel's conduct stemmed from "inattention, not reasoned strategic judgment").

**Prejudice**

The prejudice inquiry under *Strickland* looks at whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington* at 112. On habeas review, the issue is not whether Davidson has met the burden of proving prejudice. *Vega v. Ryan*, 757 F.3d 960, 969 (9th Cir. 2014). Rather, the question is "whether the state post-conviction court was reasonable in determining that [he] was not prejudiced." *Id.* (internal quotation marks omitted). Petitioner is entitled to relief if the state court's prejudice analysis was contrary to, or an unreasonable application of, *Strickland's* prejudice prong, *see* 28 U.S.C. § 2254(d)(1); or if the state court's prejudice analysis "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). *Zapata*, 788 F.3d at 1116-17. The Court "must uphold the state court's decision if 'fairminded jurists could disagree' as to whether it was correct." *Gulbrandson v. Ryan*, 738 F.3d 976, 990 (9th Cir. 2013) (*quoting Harrington* at 88).

The Court of Appeal's prejudice determination was not reasonable even under these deferential standards. The court said "[a]s we will explain later, there was no prejudicial effect on defendant's trial." *Davidson*, 2015 WL 659891, at *13. But the ensuing explanation was brief:

> We conclude the prosecutor may have committed arguable misconduct when he implied that defense counsel's job was to confuse the facts and mislead the jury, while the prosecutor's role is to elicit the truth. However, we are not persuaded that this limited incident of arguable misconduct warrants reversal of the jury's verdict.
>
> The statements challenged by defendant on appeal constitute only a fraction of the prosecutor's closing argument. Additionally, the jury was specifically instructed by the court that the attorneys' arguments were not evidence and that they were not to be swayed by public opinion or public feeling. "The presumptions that jurors understand and follow their instructions [citation] and do not draw the most

15

> damaging inferences from ambiguous arguments [citation] minimize our concern that the instant jury's verdict was influenced by a misapplication of the prosecutor's remarks." (*People v. Shazier* (2014) 60 Cal. 4th 109, 150-151.)
>
> We also disagree with defendant's assertion that there was a pattern of misconduct so egregious that it infected the trial with a fundamental unfairness. The limited instance of arguable misconduct does not give rise to a constitutional violation on the state or federal level. No reversible error appears.

*Id.* at 15.

While this prejudice analysis was with respect to prosecutorial misconduct, the state court then immediately stated that "[a]ccordingly, we also conclude that defendant's trial counsel did not render ineffective assistance for his failure to object to the alleged incidents of misconduct. Defendant has failed to demonstrate he was prejudiced by his counsel's alleged failures." *Id.* (citing *Strickland*, 466 U.S. at 697).

That was not a reasonable conclusion, legally or factually. As the record plainly shows, the prosecutor engaged in a pattern of misconduct throughout his closing arguments. Defense counsel's was objectively deficient in failing to object. It follows that there is a reasonable probability that the result of the proceeding would have been different. Consequently, the state court decided the prejudice question unreasonably by essentially rubberstamping the prosecutor's incendiary comments and brushing aside the failure of defense counsel, and the trial court, to intervene.

This is all the more troubling because some of the last words spoken by the prosecutor were that he had chosen a fair jury while defense counsel sought something sinister. The presentation of improper statements at the end of trial "magnifie[s] its prejudicial effect because it is freshest in the mind of the jury when [it] retire[s] to deliberate." *Zapata* at 1122-23 (alterations in original) (internal quotation marks omitted); *see also United States v. Sanchez*, 659 F.3d 1252, 1261 (9th Cir. 2011) (improper prosecution statement in a closing rebuttal was particularly problematic because "it was the last argument the jury heard before going to the jury room to deliberate," thus "increas[ing] the risk that the inflammatory statement would improperly influence the jurors."). Defense counsel's only recourse was to object, which he did not do.

16

The Court of Appeal suggested that the prosecutor's comments may have been in response to a statement by defense counsel during closing argument that he had taken the case because he thought it was fundamentally unfair. *Davidson*, 2015 WL 659891, at *12. This is a reference to the doctrine of "invited response," which advises that "the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12 (1985). Applying the doctrine here would be unreasonable because many of the prosecutor's egregious remarks were made before defense counsel spoke, and could not have been in response to his statements. And regardless of timing, defense counsel did not say anything that would have opened the door to the prosecutor's disparaging remarks about counsel's integrity and jury selection decisions, or other ad hominem attacks.

The state court noted that the jury had been instructed that the attorneys' arguments were not evidence and that it is presumed that jurors follow their instructions. *Davidson*, 2015 WL 659891, at *15. While true, the only instructions to the jury to not accept the attorneys' arguments as evidence following the closing arguments were given in response to defense counsel's one objection and in the general jury instructions. RT at 319, 336-37. The trial court never told the jury to disregard the improper statements as a whole. Although a specific limiting instruction can cure an instance of misconduct, *see*, *e.g.*, *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974), the trial court's failure to instruct the jury on the totality of the prosecutor's many improper statements negates any saving value the lone instruction might have had. *See Zapata* at 1123.

As a final consideration, the case against Davidson in general was not overwhelming. The prosecutor presented two witnesses: one of the victims and a police officer.[1] The prosecutor conceded that the officer's testimony was weak:

> [He] didn't do a great job of investigating this case. He didn't. I don't know if he was tired, I don't know if he got lazy, but he didn't write two separate statements. He wrote "confirmed". It doesn't sound like he pushed her [the victim] or asked her, Did you see anything right before? Did you see anything right after? Maybe it was just because she was shaken up and she was fifteen years old,

---

[1] The other victims did not testify.

17

> and he didn't want to bother her anymore. Let's give him the benefit of the doubt there. His big heart got in the way of doing more.

RT at 288-89. The remaining evidence consisted of the victim testifying that Davidson was the perpetrator, and Davidson testifying that he had not been involved. The overall weakness of the evidence buttresses the conclusion of serious misconduct here, *see Schuler*, 813 F.2d at 982, and makes it conceivable that the prosecutor tried to compensate with improper remarks in closing arguments.

## CONCLUSION

The petition for writ of habeas corpus is **GRANTED** on the Sixth Amendment claim. Petitioner's conviction is vacated and respondent shall release Davidson unless the State of California begins proceedings to retry him within **90 days** of the date of this order. If the current public health situation makes that date infeasible, respondent should promptly advise the Court and propose an alternative deadline. A Certificate of Appealability is **DENIED** with respect to the prosecutorial misconduct claim that the Court found procedurally defaulted. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk is requested to send a copy of this order to the Sixth District Appellate Program, 95 S. Market Street, Suite 570, San Jose, CA 95113. The Court asks that the Sixth District Appellate Program consider representation for Davidson if he meets the eligibility requirements.

The Clerk is also requested nm, to send a copy of this order to Davidson at California Medical Facility, P.O. Box 2000, Vacaville, CA 95696. Davidson must update the Court with his current address.

**IT IS SO ORDERED.**

Dated: March 23, 2020

JAMES DONATO
United States District Judge